## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: **11-03801-hb**

### ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/26/2011**



US Bankruptcy Judge
District of South Carolina

Entered: 10/26/2011

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>William Leonard Flucker and<br>Bobbie Jo Janine Flucker,<br><br>Debtor(s). | C/A No. 11-03801-HB<br><br>Chapter 13<br><br>**ORDER DENYING CONFIRMATION<br>OF CHAPTER 13 PLAN** |

**THIS MATTER** comes before the Court for confirmation of Debtors' Chapter 13 plan, and Federal National Mortgage Association's ("Fannie Mae") Objection thereto. Debtors seek to cure through their Chapter 13 plan arrearages on a note secured by a mortgage attaching to their principal residence. However, they do not hold title to the property securing the debt and are not obligated on the note and mortgage. For the reasons set forth below, the Court sustains Fannie Mae's objection and denies confirmation.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c).[1]

**FINDINGS OF FACT**

1.    Terence M. Morgan purchased real property located at 515 Tomotley Court, Greer, in Spartanburg County, South Carolina (the "Property") on February 7, 2007, for $180,000. (Doc. 10, ¶ 21). On the same date, Morgan executed a mortgage on the Property in favor of Bankline Mortgage Corp. ("Mortgage") which is recorded in

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also so adopted.

Book 3831 at Page 410 in the Spartanburg County Register of Deeds Office. *Id.* The Mortgage was subsequently assigned to Fannie Mae on May 10, 2011, by assignment recorded in Book 4466 at Page 73. *Id.*

    2.    Debtors allege that on July 22, 2009, they entered into an agreement labeled as a "Bond for Title" for acquisition of the Property from Morgan. (Doc. 13-2).[2] Under the terms of the agreement, Morgan would deed the Property to the Debtors after the full purchase price of $185,000 was paid. *Id.* at ¶ 7. Debtors were required to put $1,000 down when the Bond for Title was signed, and then make another $8,000 down payment by November 22, 2009. *Id.* at ¶ 1(a). Debtors were supposed to make monthly payments in the amount of $1,500 until August 1, 2039. *Id.* at ¶ 1(c). The monthly payments consist of $1,291.43 for principal and interest, an estimated amount of $133.57 for pro-rated taxes and insurance, and $75.00 for a management fee. *Id.* If Debtors fail to pay the full purchase price by the end of the term of the Bond for Title, all rights and obligations under the Bond for Title "shall become null and void and [the] Bond for Title shall terminate at that time." *Id.* The Bond for Title was recorded on August 24, 2009, in the office of the Register of Deeds for Spartanburg County in Book 94-K, Page 824. *Id.* at 1.

    3.    On May 18, 2011, Fannie Mae sought to foreclose its Mortgage encumbering the Property, initiating *Federal National Mortgage Association v. Morgan*, Case No. 2011-CP-42-02209, Court of Common Pleas, Spartanburg County. According to the foreclosure complaint, Morgan defaulted on the mortgage payments and the loan is in default and due for January 1, 2011. *See* Compl. ¶ 31, Case No. 2011-CP-42-02209. Fannie Mae declared the entire principal balance in the amount of $171,889.26, plus

---

[2] Debtors' counsel refers to this as an installment sale contract as well in pleadings filed with the Court.

interest, advances, late charges, and costs from December 1, 2010, due and payable. *Id.* Debtors were named as defendants in the foreclosure lawsuit to extinguish their interest, if any, in the property by virtue of their recorded Bond for Title agreement with Morgan. *Id.* at ¶ 9.

4.     There is no evidence that Fannie Mae had knowledge of the existence of the Bond for Title or had any reason to search the title records until after Morgan defaulted on the loan and the note was accelerated, in preparation of filing the foreclosure action.

5.     At the Meeting of Creditors held in this case, Debtors testified that they were aware of the Mortgage but never made any mortgage payments directly to Fannie Mae or any prior loan servicer or holder.

6.     On June 13, 2011, Debtors were served with the foreclosure action and subsequently filed their Chapter 13 petition in an attempt to stay the action. *See* Doc. 10, ¶ 17. The Property is the Debtors' residence.

7.     In their petition and schedules, Debtors claimed the entire Property as part of the bankruptcy estate by virtue of the Bond for Title and estimated the amount of the secured claim encumbering the Property at $171,537.03. This is essentially the principal balance Morgan owes to Fannie Mae on the Loan. *See* Doc. 1, Sch. A. Fannie Mae is named as a secured creditor of Debtors pursuant to a "Mortgage/Bond for Title." Debtors valued their interest in the property at $170,000. *See* Doc. 1, Sch. D. Morgan is also listed as a secured creditor, but for "Notification Purposes Only," and any property securing Morgan's claim is scheduled at $0. *Id.* In Schedule J, Debtors listed their current monthly rent or home mortgage payment as only $1,167.00 a month instead of the

$1,500 month payment due pursuant to the terms of the Bond for Title. (Doc. 1, Sch. J; Doc. 13-2, ¶ 1(c)). They do not list any real estate taxes or homeowners' insurance as expenses. *Id.* Debtors claim they have lived at the Property for at least three years prior to filing bankruptcy. *See* Doc. 1, Statement of Financial Affairs, ¶ 15; Doc. 13-2, ¶ 3.

8. In their Amended Schedule G, itemizing Executory Contracts and Unexpired Leases, Debtors identified: (1) a "Payment/Escrow Management Agreement" with National Real Estate Services.Com, Inc. ("NRES") as an executory contract (Doc. 13, Am. Sch. G); (2) the Bond for Title between Morgan and the Debtors identified as Exhibit A; (3) a Payment/Escrow Management Agreement between Morgan and NRES identified as Exhibit B; and (4) a Payment/Escrow Management Agreement between Debtors and NRES identified as Exhibit C. All exhibits identified are attached to the Amended Schedule G. (Doc. 13-2). Many of these documents are also relevant to the related adversary proceeding, *Flucker v. Gantt*, Adv. Pro. No. 11-80078-hb.

9. Debtors' Proposed Chapter 13 Plan lists the Fannie Mae loan under the heading supplied for long term or mortgage debt in this Court's form plan, and the Plan states that it will cure Morgan's arrearage to Fannie Mae over five (5) years and make regularly scheduled post-petition payments of Morgan's loan directly to Fannie Mae. (Doc. 2, ¶ B(3)). The Bond for Title is not specifically mentioned in the Plan, but Debtors indicated that they intend to reject all executory contracts and unexpired leases. *See* Doc. 2, ¶ D.

10. Fannie Mae objected to the confirmation of Debtors' Proposed Plan on the basis that the Property is not property of the estate, that Debtors do not own the Property, that Fannie Mae is not in privity of contract with the Debtors, and that entering into the

Bond for Title is considered a material breach of the recorded mortgage which cannot be cured by making loan payments. (Doc. 14).

11.     Fannie Mae had not filed a Proof of Claim in this case as of the date of the confirmation hearing.  However, the Court's records indicate that Fannie Mae filed a claim on October 17, 2011, for $171,889.26. (POC #16-1).  The claim and its attachments indicate that the loan is in Morgan's name.  Furthermore, the claim states the following: "Please note that the four-digit number referenced above refers to an account which is not in the name of the debtor, and no number identifying debtor can be found.  This POC is being filed because debtor named Federal National Mortgage Association as a creditor.  Whether or not this property is part of the bankruptcy estate is the subject of a related adversary action." *Id.*

### CONCLUSIONS OF LAW

Debtors frame the question before this Court as whether a Chapter 13 debtor who is not in contractual privity with the mortgagee can repay a secured loan to that mortgagee through a Chapter 13 bankruptcy plan.  Debtors claim this can be done on these facts and cite *In re Trapp*, 260 B.R. 267 (Bankr. D.S.C. 2001), and *In re Davis*, C/A 10-02249-JW, 2010 Bankr. LEXIS 4619 (Bankr. D.S.C. Oct. 12, 2010), to support their contention.  In *Trapp*, the Court found that a mortgage holder held a "claim" against a debtor's estate even though the debtor was not in privity of contract with the mortgage holder, because "'it is undisputed . . . that the debtors own the Property as to which the bank holds a lien and that the Property is property of the estate.'" *Id.* at 271 (quoting *In re Allston*, 206 B.R. 297, 299 (Bankr. E.D.N.Y. 1997)).  The debtors in *Trapp* and *Davis*[3],

---

[3] While ruling on a motion for relief from stay filed after a plan was confirmed without objection that cured a default to movant on a mortgage when there was no privity of contract between the debtor and creditor,

both held legal title to the property in question; however, that is not the Debtors' situation in the instant case.

> It is generally recognized that the purchaser under an executory contract for the purchase and sale of real property has an ***equitable lien*** on the property in the amount paid on the purchase price. This equitable interest arises from the payment of the money and does not depend on the purchaser's taking possession of the real estate.

*S.C. Fed. Sav. Bank v. San-A-Bel Corp.,* 307 S.C. 76, 78-79, 413 S.E.2d 852, 854 (App. 1992) (emphasis added) (internal citations omitted). However, debtors assert that:

> The only distinction between the holdings in *Trapp* and *Johnson*[4], and the case at bar, is the debtor is holding legal title versus an equitable interest in the property. However, this distinction leads to the same result, that is, in both instances the debtor's interest is property of the estate (§105), and the creditor mortgagee has a claim against the estate (§105(5)) that the debtor has the right to cure (§1322(b)(3)).

(DR's Prop. Or., Doc. No. 32 at 6) (footnote added).

It is true that § 1322(b)(3) of the Bankruptcy Code allows a debtor to propose a plan to "provide for the curing or waiving of any default." 11 U.S.C. § 1322(b)(3). Fannie Mae certainly holds a claim secured by a "security interest in real property that is

---

the court in *In re Davis*, C/A 10-02249-JW, 2010 Bankr. LEXIS 4619 (Bankr. D.S.C. Oct. 12, 2010), found that confirmation was not inappropriate.
> In this case, Debtor has title to the property by virtue of the Deed from [Mortgagor], which was recorded prior to the bankruptcy filing. Even prior to the Deed, Debtor asserted an equitable interest due to his Lease with Option to Purchase, possession of the property, and making of payments—some directly to [Mortgagee]. The Court finds that the Property is property of the estate. Since Debtor is the owner of the Property as to which [Mortgagee] holds a lien and that Property is property of the estate, [Mortgagee] therefore holds a claim against Debtor within the meaning of §1322(b) and such claim may be treated in the Plan.

*Id.* at *7.

[4] In *In re Johnson*, 429 B.R. 540 (Bankr. D.S.C. 2010), a creditor with a security interest in a dump truck sought relief from the automatic stay or, alternatively, that the truck was not subject to the stay because it was not property of the Chapter 13 estate under 11 U.S.C. § 541. *Id.* at 542-43. The court rejected the debtor's argument that mere possession of personal property was sufficient to establish an equitable interest in the truck in order to trigger the automatic stay. The court found that the debtor failed to demonstrate a good-faith, colorable claim or basis for possession of the truck because it was leased in the name of debtor's employer only, and the debtor received paychecks from her employer indicated that her right to use the truck arose from her employment of the company. *Id.* at 545. Therefore, the court concluded that the truck was not property of the debtor or her estate and not subject to the automatic stay. *Id.*

the debtor's principal residence" as set forth in 11 U.S.C. § 1322(b)(2). These facts, however, do not make Fannie Mae the holder of a "secured claim" in this case secured by property of the Debtors. The finding in *Trapp* that the mortgage holder held a secured claim was based on the fact that the debtor owned the property (by holding legal title) on which the bank had a lien, making the claim squarely secured by property of the estate. *Trapp*, 260 B.R. at 271. In the instant case, the only intersection between Fannie Mae's debt and Debtors is that Fannie Mae holds a mortgage lien secured by property owned by Morgan and Debtors have an equitable lien on and occupy that property owned by Morgan.[5] Accordingly, Fannie Mae holds a lien on real property that **is not** property of the estate. The Court cannot find, and the parties have not supplied, any authority sufficient to support a finding that possession plus an equitable lien on real property for amounts paid thus far transforms Debtor's interest into one sufficient to fit the factual pieces of this puzzle into 11 U.S.C. § 1322.

In an attempt to find applicable authority, the Court considered *In re Rivers-Jones*, C/A No. 07-02607-JW, 2007 Bankr. LEXIS 2992 (Bankr. D.S.C. Sept. 4, 2007), where Judge Waites found that a debtor not in privity of contract with a creditor could value a mobile home titled in the name of another in her Chapter 13 plan based on the Debtor's equitable interest in the property. However, the facts of that case are far different from this one because the Court found that the debtor's equitable interest arose

---

[5] Debtors also argued at the hearing that Fannie Mae acknowledged their ownership interest in the Property by naming them as defendants in its foreclosure action against Morgan. The recorded Bond for Title constitutes notice of an *equitable lien* held by Debtors on the subject property which is junior and subsequent to Fannie Mae's mortgage. *S.C. Fed. Sav. Bank,* 307 S.C. at 78-79, 413 S.E.2d at 854. In other words, it is possible that the Debtors are creditors of Morgan to the extent they have made payments under the Bond for Title. *Id.* Fannie Mae properly named the Debtors in the foreclosure action because all possible junior lien holders must be named in order to extinguish their interests at the foreclosure sale, or to put the junior lien holder on notice of possible surplus funds. *See* Berkowitz et al., *South Carolina Foreclosure Law Manual* 23 (2006).

from a resulting trust she held in the home. *Id.* at \*9-10. That is, the Court essentially found that she was a current owner of the property in question by operation of law to the facts of that case. The debtor held a resulting trust because the loan and mobile home were placed in the grandmother's name in order to assist the debtor, but the debtor made all the payments on the mobile home directly to the creditor, including taxes and insurance, the debtor always resided there, and the grandmother intended for the debtor to have at least a current ownership interest in the home. *Id.* at \*10.[6] Judge Waites found that the resulting trust effectuated the "intent of the parties[,]" which was either sole or joint ownership of the property at that point in time. *Id.* at \*9. There are no allegations that the facts in the instant case create a resulting trust—there was no intention on the part of Morgan and Debtors for Debtors to have an ownership interest in the home before the full debt set out in the Bond for Title was paid. The terms of the contract itself do not support such a finding.

Debtors have not provided any authorities that would convince the Court that they have met their burden of proof that the plan complies with the standards for confirmation set forth in 11 U.S.C. § 1325.[7]

**IT IS THEREFORE ORDERED:**

That Confirmation of the Plan is denied.

---

[6] *But see In re Lee*, C/A No. 10-07833 JW, slip op. (Bankr. D.S.C. Feb. 28, 2011) (denying confirmation because debtor failed to show that she held an equitable interest through a resulting trust or through possession because she did not provide a "good-faith, colorable claim to or basis for possession of the Mobile Home.").

[7] The court notes, however, that the automatic stay of 11 U.S.C. § 362 may be applicable as a result of Debtors' possession of the property combined with their recorded Bond for Title interest from Morgan, as they may have some minimal equitable interest that is property of the estate (contract rights, equitable lien). *See In re Anderson*, 2004 Bankr. LEXIS 2359 (Bankr. D.S.C. April 15, 2004). This is not inconsistent with a finding that the mortgage arrearage cannot be paid through the plan. The scope and application of the automatic stay are entirely different issue than application of 11 U.S.C. §1322.